# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SAM KLEIN**<br>**Plaintiff,**<br><br>**v.**<br><br>**TIMOTHY GLICK, RENEE GLICK,**<br>**JACOB J. GLICK, AARON COTTO,**<br>**OFFICER CHRISTIAN ROSARIO, IN**<br>**HIS INDIVIDUAL CAPACITY, CARL**<br>**JOHNSON, IN HIS INDIVIDUAL**<br>**CAPACITY, SGT. MARC ZUCCERELLA,**<br>**IN HIS INDIVIDUAL CAPACITY, AND**<br>**PAUL FERENCEK, IN HIS INDIVIDUAL**<br>**CAPACITY.**<br><br>**Defendants.** | **CIVIL ACTION NO.:  3:19-CV-01056**<br>**SRU**<br><br><br><br><br><br><br><br><br>**OCTOBER 8, 2019** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS ROSARIO, JOHNSON AND ZUCCERELLA

Pursuant to Fed. R. Civ. P. 12(b)(6) , the defendants, Christian Rosario, Carl Johnson, and Marc Zuccerella (hereinafter, collectively "Greenwich Police Defendants"), submit this memorandum of law in support of their motion to dismiss the claims against them in the plaintiff's Complaint for failure to state a claim upon which relief can be granted.  Specifically, the Greenwich Police Defendants move to dismiss Counts One and Three[sic][1] (false arrest/false imprisonment in violation of 42 U.S.C. § 1983 and Connecticut common law, respectively) because the plaintiff was arrested pursuant to a facially valid arrest warrant, the arresting officers had probable cause to arrest the plaintiff, and the claims are barred under qualified immunity; Count Three (conspiracy to violate 42 U.S.C. § 1983) because it is legally insufficient and the

---

[1] The plaintiff has asserted two Count Three's in his Complaint for separate and distinct causes of action.  For purposes of this motion, the Greenwich Police Defendants refer to the plaintiff's state law false arrest/false imprisonment claim as "Count Three [sic]."

defendants are entitled to qualified immunity on the claim; and Counts Four and Six (negligent infliction of emotional distress and negligence, respectively) because the claims are legally insufficient and governmental immunity protects the Greenwich Police Defendants against such claims. For the reasons set forth herein, none of these counts state viable claims and, accordingly, the Greenwich Police Defendants respectfully request that this Court dismiss all counts against them.

## I.    FACTUAL ALLEGATIONS

Christian Rosario and Carl Johnson are police officers with the Greenwich Police Department, and at the time of the events at issue, Marc Zuccerella was a Sergeant with the Greenwich Police Department.[2] (Compl. ¶ 11.) The plaintiff's Complaint details a colorful history between the plaintiff, Sam Klein, and defendants Timothy and Renee Glick ("the Glicks"), Timothy Glick's father, defendant Jacob J. Glick, and defendant Aaron Cotto. As pertains to the claims against the Greenwich Police Defendants, the plaintiff alleges that on April 28, 2016, the Glicks sued Klein in the Delaware Court of Chancery, which resulted in a judgment against Klein for $433,000 in November 2018. (Id. ¶ 12A.[3]) During post-judgment proceedings, the Glicks obtained a contempt citation against Klein, which resulted in entry of an order calling for Klein's arrest in Delaware, issuance of a civil capias, and requiring that Klein be listed on both the Delaware Criminal Justice Information System and the National Crime Information Center Database ("NCIC"). (Id. ¶ 13.)

The plaintiff further alleges that, "[i]nstead of being satisfied with the judgment they won in the Delaware Court of Chancery, the Glick defendants effectively converted the [Greenwich

---

[2] Zuccerella is now a Lieutenant with the Greenwich Police Department.
[3] The Complaint contains two paragraphs numbered "12." The Greenwich Police Defendants refer to these as paragraphs 12 and 12A, respectively.

Police Defendants] and a Connecticut State's Attorney [defendant Paul Ferencek] into their unwitting accomplices" to "[have] the Plaintiff arrested, searched, secured in handcuffs, [and] transported in custody to be booked and processed." (Id. ¶¶ 2–3.) According to the plaintiff, Cotto, "working at the instruction of and on behalf of the Glicks and being paid by Jacob J. Glick," schemed to have Klein arrested. (Id. ¶¶ 15–24.) Cotto's efforts culminated in an incident on October 15, 2018, when Cotto engaged in a motor vehicle pursuit of Klein, prompting Klein to approach a group of police officers. (Id. ¶¶ 18–21A.[4]) The officers immediately "started radioing people" and spoke with both Klein and Cotto. (Id. ¶ 21A.) Cotto provided the officers with the Order of the Court of Chancery and the civil capias. (Id.)

When the Greenwich Police Defendants arrived at the scene, they detained Klein "[f]or over an hour, during which time [they] attempted to determine how to handle the issue, as they recognized that it was a civil matter but at the same time it was in this NCIC database." (Id. ¶ 23A.) The Complaint describes a series of phone calls, as Zuccerella first contacted the Delaware Court of Chancery, which confirmed the capias and indicated that it had issued in a civil matter. (Id.) Uncertain as to whether they should arrest Klein on a civil capias, Zuccerella next sought the advice of Ferencek, a Supervisory Connecticut Assistant State's Attorney. (Id.) "Ferencek said that his view was to arrest Klein," and that he would contact the State's Attorney, Richard J. Colangelo, for a second opinion. (Id.) In a subsequent phone call, Ferencek told Zuccerella that Colangelo had confirmed Ferencek's opinion that the plaintiff should be arrested, expressed his own belief that a civil capias might have a criminal component, and advised the police to determine whether Delaware wished to extradite Klein. (Id.) The police dispatcher told the Greenwich Police

---

[4] The Complaint contains duplicate paragraphs numbered 21, 22, 23, and 24. For purposes this motion, the Greenwich Police Defendants refer to the duplicate paragraphs as 21A, 22A, 23A, and 24A.

Defendants that dispatch had received a teletype from Delaware indicating that Delaware, in fact, would extradite.  (Id.)

As a result of these events, Klein was arrested.  (Id. ¶ 24A.)  Nine days later, on October 24, 2018, the charge against Klein was dismissed, and the arrest was expunged from police records. (Id. ¶ 27.)

Klein initiated this lawsuit on July 3, 2019, including four causes of action against the Greenwich Police Defendants: (1) false arrest/false imprisonment in violation of 42 U.S.C. § 1983 (Count One); (2) false arrest/false imprisonment under Connecticut state law (Count Three [sic]); (3) negligent infliction of emotional distress (Count Four); and (4) negligence (Count Six).  The Greenwich Police Defendants now move to dismiss all of these counts.  Although it does not appear that Klein seeks to recover against the Greenwich Police Defendants for conspiracy in violation of 42 U.S.C. § 1983 (Count Three), insofar as Count Three includes any claims against these defendants, they move to dismiss Count Three as to them, as well.

## II.     LAW AND ARGUMENT

### A.     This Court Has Both Original Jurisdiction and Supplemental Jurisdiction Over the Plaintiff's Claims

Preliminarily, this Court has original jurisdiction over the plaintiff's claims under 42 U.S.C. § 1983 and supplemental jurisdiction over the plaintiff's claims arising under Connecticut common law.  Pursuant to 28 U.S.C. § 1331, this Court retains jurisdiction over "cases that aris[e] under federal law."  Home Depot U.S.A., Inc. v. Jackson, 139 S. Ct. 1743, 1746, 204 L. Ed. 2d 34 (2019) (internal quotation marks omitted).  "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." Arbaugh v. Y&H Corp., 546 U.S. 500, 513, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).  Section 1331 establishes this Court's original jurisdiction over Counts One and Three.

Pursuant to 28 U.S.C. § 1367(a), federal courts may also have supplemental jurisdiction "over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).  District courts retain supplemental jurisdiction where the state law claims are "so related to federal claims that they form part of the same case or controversy under the Constitution" and "derive from a common nucleus of operative fact." Petion v. Allied Home Mortgage Capital Corp., No. 3:09-cv-01 (SRU), 2009 WL 10714004, at *1 (D. Conn. July 15, 2009) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)) (internal quotation marks omitted).

Here, in addition to the claims against the Greenwich Police Defendants for false arrest in violation of 42 U.S.C. § 1983 and, potentially, for conspiracy to aid and abet a violation of 42 U.S.C. § 1983, the plaintiff also asserts Connecticut state law claims for false arrest (Count Three [sic]), negligent infliction of emotional distress (Count Four), and negligence (Count Six).  The allegations in the Complaint demonstrate that the state law claims are "so related" to the claims arising under § 1983 that they "form part of the same case or controversy," and derive from the same common nucleus of operative fact as the claims under § 1983.  Petion, 2009 WL 10714004 at *1.  Therefore, this Court has both original jurisdiction over the plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Connecticut state law claims pursuant to 28 U.S.C. § 1367(a).

To the extent this Court agrees with the Greenwich Police Defendants that the plaintiff's § 1983 claims for false arrest and conspiracy should be dismissed, the defendants respectfully request that this Court retain supplemental jurisdiction over the plaintiff's remaining state law claims.  See Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) ("[w]hen a district

court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject–matter jurisdiction, the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state–law claims").   "In considering whether to retain jurisdiction over state law claims, the district court must weigh factors, such as judicial economy, convenience, fairness and comity."   Wright v. Musanti, 887 F.3d 577, 582 n.2 (2d Cir. 2018) (citation omitted).   "The declining of supplemental jurisdiction must actually promote those values as the fact that one or more of the grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) applies does not mean that dismissal is mandated."   Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018) (internal quotation marks omitted).

Principles of fairness, judicial economy, convenience, and comity favor the exercise of supplemental jurisdiction over the present plaintiff's state law claims, should the Court dismiss the claims arising under § 1983.  All of the plaintiff's claims stem from the same alleged events leading up to Klein's arrest.  There are multiple sets of defendants represented by different attorneys—in addition to the Greenwich Police Defendants, there are the "Glick" defendants, Aaron Cotto, and Paul Ferencik.  Failure to exercise supplemental jurisdiction over the state law claims could result in litigation of different claims against different defendants in multiple courts and different jurisdictions and, therefore, would work against judicial economy and the efficient use of parties' resources.  Additionally, the deficiencies in the plaintiff's federal claims are equally dispositive of the state law claims, and the same immunities protect the Greenwich Police Defendants against all of the claims against them.  It would be inefficient and unfair to the Greenwich Police Defendants to require them to relitigate the same issues in state court, when the state law claims may properly be decided here.

### B.   Standards for Motion To Dismiss

Fed. R. Civ. P. 12(b) provides a vehicle for a party to challenge the legal sufficiency of the Complaint at the outset of the litigation.  "The function of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assay the weight of the evidence which might be offered in support thereof. . . .   The motion must therefore be decided solely on the facts alleged." Micalizzi v. Nationwide Mut. Ins. Co., No. 3:06-cv-59 (SRU), 2007 WL 879137, at *1 (D. Conn. Mar. 22, 2007) (citations omitted; internal quotation marks omitted).

> To survive a motion to dismiss filed pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .   Legal conclusions and [t]hreadbare recitals of the elements of a cause of action are not entitled to a presumption of truth. . . . Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the non-movant's favor.

Cozayatl Sampedro v. Schiriro, 377 F. Supp. 3d 133, 138 (D. Conn. 2019) (citations omitted; internal quotation marks omitted).

### C.   The Plaintiff Fails To State An Actionable Claim for False Arrest/False Imprisonment Under 42 U.S.C. § 1983 or Connecticut State Law (Counts One and Three[sic])

In Counts One and Three [sic], the plaintiff asserts claims for false arrest/false imprisonment in violation of 42 U.S.C. § 1983 and under Connecticut state law, respectively. These counts both fail to state viable claims, because the Complaint establishes that the Greenwich Police Defendants arrested Klein pursuant to a facially valid warrant, that they had probable cause to arrest him even without a warrant, and that these defendants are entitled to qualified immunity as a matter of law.

"[C]laims for false arrest . . . brought under § 1983 . . . are substantially the same as claims for false arrest . . . under state law," and are properly analyzed together.  See Chase v. Nodine's Smokehouse, Inc., 360 F. Supp. 3d 98, 111–12 (D. Conn. 2019) (internal quotation marks omitted) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)); Figueroa v. North Haven, No. 3:17-cv-00650 (SRU), 2017 WL 6045421, at *4 (D. Conn. Dec. 6, 2017).  In analyzing claims for false arrest or false imprisonment under § 1983, the Second Circuit instructs courts to "look[] to the law of the state in which the arrest occurred."  Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir.) (internal quotation marks omitted), cert. denied, 552 U.S. 818, 128 S. Ct. 109, 169 L. Ed. 2d 24 (2007); see also Walker v. Sankhi, 494 F. App'x 140, 142 (2d Cir. 2012) (valid claim for false arrest under § 1983 requires plaintiff to satisfy elements of state law claim).

"Under Connecticut law, [f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  Id. at 204 (internal quotation marks omitted).  "The elements of a [false arrest/false imprisonment] claim under Connecticut law are (1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause."  Chase, 360 F. Supp. 3d at 112 (internal quotation marks omitted).  "Although the substantive analysis of [a] plaintiff's § 1983 and common-law claims of false arrest . . . is virtually identical under § 1983 and the common law, in order to establish a § 1983 claim, the plaintiff bears the additional burden of demonstrating both a constitutional or statutory violation, and that the alleged misconduct was carried out 'under color of state law.'"  Nodoushani v. S. Conn. State Univ., 95 A.3d 1248, 1254 n. 3 (Conn. App. Ct. 2014).

For purposes of this motion, the Greenwich Police Defendants address the plaintiff's claims for false arrest pursuant to § 1983 (Count One) and false arrest under Connecticut state law (Count

Three[sic]) together because the existence of a facially valid arrest warrant and the existence of probable cause to arrest provide complete defenses to both claims. See, e.g., Johnson v. Dobry, 660 F. App'x 69, 71 (2d Cir. 2016) (arrest warrant complete defense to § 1983 claim); Southerland v. Garcia, 483 F. App'x 606, 608 (2d Cir. 2012) (same); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (probable cause complete defense under both federal and state false arrest claims); Outlaw v. Meriden, 682 A.2d 1112, 1115 (Conn. App. Ct.), cert. denied, 686 A.2d 122 (Conn. 1996) (arrest warrant complete defense to state law claims[5]). Moreover, Count One fails on the additional grounds of qualified immunity.

### 1.     The plaintiff was arrested pursuant to a facially valid arrest warrant

The plaintiff's false arrest claims fail as a matter of law because the issuance of the civil capias demonstrates that Klein was arrested pursuant to a valid arrest warrant. As noted above, a facially valid arrest warrant provides a complete defense to a claim for false arrest. See Russo, 479 F.3d at 204 (citing Outlaw, 682 A.2d at 1115). This Court previously found a civil capias sufficient to satisfy the warrant requirement for purposes of false arrest claims. See Milner v. Duncklee, 460 F. Supp. 2d 360, 370 (D. Conn. 2006). Of note, in determining whether a civil capias meets the Fourth Amendment requirements for lawful searches and seizures in the home, a constitutionally sacrosanct arena, this Court left no question that a capias "clearly authorized the defendants to arrest [the plaintiff] in a public place." Milner, 460 F. Supp. 2d at 365; see also id. at 375 ("[A] capias can, and in this case did, properly authorize arrest. As a result, the defendants could have arrested [the plaintiff] in a public place"); Id. at 366 n.5 ("The parties do not dispute— nor do I—that the capias authorized [the plaintiff's] arrest elsewhere [i.e., outside the home]").

---

[5] Although Outlaw involved a false imprisonment claim, the Appellate Court there "stated that the applicable law for false arrest and false imprisonment is identical, and therefore there is no cause of action for false imprisonment if the plaintiff was arrested pursuant to a facially valid arrest warrant." Russo, 479 F.3d at 204 (internal quotation marks omitted).

Other courts have similarly considered a facially valid capias as proper authorization for a suspect's arrest.  See, e.g., Micalizzi, 2007 WL 879137 at *2 (equating facially valid capias to facially valid arrest warrant in granting defendants' motion to dismiss false imprisonment claim where plaintiff was arrested pursuant to facially valid capias); Warner v. Gyle, No. 3-09-cv-199 (RNC), 2010 WL 3925211, at *1–2 (D. Conn. Sept. 30, 2010) (granting summary judgment for defendant on federal false arrest and false imprisonment claims where plaintiff arrested pursuant to valid capias).

In the present case, the allegations in the Complaint establish that the Greenwich Police Defendants arrested Klein based upon "a civil capias" issued by the Delaware Chancery court. (Compl., Count One, ¶¶ 12, 35.)  There are no allegations suggesting that the capias was facially invalid and, notably, the plaintiff's allegations illustrate the Greenwich Police Defendants' affirmative efforts to confirm the validity of the capias.  (Id. ¶ 23A.)  Nor does the plaintiff allege that the Greenwich Police Defendants had any role in the issuance of the capias in Delaware. Instead, the plaintiff alleges that the civil capias was not a "warrant" for purposes of his arrest (id. ¶ 35), which allegation the Court should disregard because it is a legal conclusion lacking any factual support.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation").  This allegation also ignores the conclusions of multiple courts, including this Court, that a capias authorizing an individual's arrest is a facially valid arrest warrant and complete defense to a claim for false arrest or false imprisonment.  Therefore, the plaintiff's claims for false arrest in Counts One and Three [sic] are untenable as a matter of law and should be dismissed.

2.      The Greenwich Police Defendants had probable cause to arrest the plaintiff

The false arrest claims also fail because the allegations in the Complaint show that the

Greenwich Police Defendants had probable cause to arrest Klein, which "constitutes justification

and is a complete defense" to a false arrest action, regardless of "whether that action is brought

under state law or under § 1983."  Weyant, 101 F.3d at 852 (citations omitted; internal quotation

marks omitted); see also Tyus v. Newton, No. 3:13-cv-1486 (SRU), 2015 WL 1471643, at *5 (D.

Conn. Mar. 31, 2015) ("It is well-established that probable cause is a complete defense to claims

of false imprisonment and false arrest").  The probable cause standard is the same under both

Connecticut and federal law.  Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007).  When an officer

performs a warrantless arrest, it is considered permissible "when supported by probable cause and

when . . .  the arrest takes place in public."  Liffiton v. Kiszewski, 629 F. App'x 144, 145 (2d Cir.

2015).   "An arrest is supported by probable cause when the officers have knowledge of, or

reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that an offense has been or is being committed by the

person to be arrested."  Kilburn v. Vill. of Saranac Lake, 413 F. App'x 362, 363 (2d Cir. 2011)

(internal quotation marks omitted).

"Because the [probable cause] standard is fluid and contextual, a court must examine the

totality of the circumstances [surrounding] a given arrest" and "consider the circumstances from

the perspective of an objectively reasonable police officer, recognizing that the officer is entitled

to draw reasonable inferences on the basis of his prior experience."  United States v. Pabon, 871

F.3d 164, 174 (2d Cir. 2017), cert. denied, 139 S. Ct. 61, 202 L. Ed. 2d 44 (2018).  A court must

also consider the facts "*available to the officer* at the time of the arrest and immediately before it,

. . . as [p]robable cause does not require absolute certainty."  Panetta v. Crowley, 460 F.3d 388,

395 (2d Cir. 2006) (emphasis in original; internal quotation marks omitted).

"[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weight of the evidence." Id. at 396. Nor must the arrest result in conviction for the arresting officers to have acted with probable cause. See United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) ("[t]he quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction"). Rather, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

The totality of the circumstances alleged in Counts One and Three [sic] amply establish probable cause. The plaintiff alleges that the following events occurred before the Greenwich Police Defendants arrested him: (1) Cotto provided the officers with the Order of the Court of Chancery and the civil capias; (2) when the Greenwich Police Defendants arrived, they recognized that the Order appeared on the NCIC database pertaining to the plaintiff; (3) Zuccerella contacted the Delaware Court of Chancery, which confirmed the capias and indicated that it was from a civil matter; (4) Zuccerella also sought the advice of Ferencek, Supervisory Connecticut Assistant State's Attorney, who informed Zuccerella that Klein should be arrested; (5) Ferencek later told Zuccerella that State's Attorney Colangelo confirmed Ferencek's opinion that Klein should be arrested; and (6) police dispatch told the Greenwich Police Defendants that Delaware had sent a teletype indicating it would extradite Klein.

Indeed, the information available to the Greenwich Police Defendants when they arrested

Klein provides particularly strong support for a finding of probable cause here.  First, the very fact that Klein was in the NCIC database provided the Greenwich Police Defendants with probable cause, regardless of whether Klein's name belonged there, which he now disputes.  See Sanchez v. Port Auth. of New York & New Jersey, No. 08-cv-1028 RRM CLP, 2012 WL 1068078, at *6 (E.D.N.Y. Mar. 29, 2012) ("NCIC reports are typically considered reliable and information on them has often been accepted as reasonable basis to form probable cause for an arrest").  In United States v. Towne, 870 F.2d 880, 884 (2d Cir.), cert. denied, 490 U.S. 1101, 109 S. Ct. 2456, 104 L. Ed. 2d 1010 (1989), for example, the Second Circuit considered whether the district court had erred in denying a motion to suppress evidence seized in connection with a warrantless arrest. Because the arresting officer had discovered a fugitive warrant for the appellant in the NCIC database, the Court found that the police officer had acted with sufficient probable cause.  Id. at 884.  Of particular note, the officer had received information that the charges against the appellant might already have been resolved before the officer decided to arrest.  Id.  Given the other information available to the officer, including the discovery of a warrant in NCIC, the Second Circuit nonetheless concluded that probable cause existed.  Where, as here, the arresting officer does not receive any such potentially mitigating information, the argument for probable cause is that much stronger.

Other courts within this Circuit also have dismissed false arrest claims on probable cause grounds where police discovered a warrant entered into the NCIC database and took steps to confirm this information, even where the sister state ultimately declined to extradite.  See, e.g., Justice v. Kuhnapfel, No. 13-cv-659 MKB, 2014 WL 2434139, at *3–4 (E.D.N.Y. May 29, 2014) ("Although ultimately the State of Michigan chose not to extradite Plaintiff, the issuance of a warrant from the State of Michigan, which was entered into the [NCIC] database, provided

sufficient probable cause for Defendants to arrest Plaintiff as a fugitive from justice"); Brown v. City of New York, No. 10-cv-5229 ENV ALC, 2013 WL 3245214, at *8–9 (E.D.N.Y. June 26, 2013) (finding that officer had probable cause to arrest and detain plaintiff by confirming plaintiff's name, FBI number, and Social Security number in an outstanding Massachusetts warrant posted in the NCIC database).

Furthermore, information the police obtain from other people can be sufficient to establish probable cause.  This could be an eyewitness, a putative victim or "an identified citizen informant." Panetta, 460 F.3d at 395.  The information could come from fellow police officers, id., or from a professional imparting his or her judgment.  See, e.g., Myers v. Patterson, 819 F.3d 625, 634 (2d Cir. 2016).  Certainly, then, input from the State's Attorney's office provided the Greenwich Police Defendants with probable cause, especially where the defendants were aware of the deliberation that went into the Supervisory Assistant State's Attorney's advice, and where the defendants were told that the State's Attorney had concurred.  (See Compl. ¶ 23A.)

In light of the above authority and the plaintiff's allegations in Counts One and Three [sic], it is clear that the Greenwich Police Defendants had probable cause to arrest Klein.  Not only did the defendants receive a civil capias that authorized Klein's arrest, but they also located the Order in the NCIC database, made efforts to confirm the information in the capias, and consulted the State's Attorney's office.  The plaintiff does not allege that the civil capias or Order was fraudulently obtained, such that it was unreasonable for the officers to believe in the genuineness and legitimacy of the capias.  He similarly does not allege anything to suggest that the Greenwich Police Defendants' efforts to confirm the information in the capias were unjustified or unreasonable.  To the contrary, the allegations in the Complaint illustrate that the Greenwich Police

14

Defendants exercised care and caution to verify the information they had available to them pertaining to Klein and only arrested Klein upon completion of that diligence.

Armed with multiple sources of trustworthy information as to the specific facts and circumstances outlined above, an officer of reasonable caution would be justified in believing that the Klein should be arrested.  Because the Greenwich Police Defendants had probable cause, the false arrest claims in Counts One and Three [sic] fail as a matter of law and must be dismissed.

### 3.   The Greenwich Police Defendants are entitled to qualified immunity

Count One should be dismissed for the additional reason that the Greenwich Police Defendants are entitled to qualified immunity.  "Governmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983."  Myers, 819 F.3d at 632.  The defense of qualified immunity may properly be raised by a motion to dismiss because it "provides government officials immunity from suit rather than a mere defense to liability."  Looney v. Black, 702 F.3d 701, 705 (2d Cir. 2012) (internal quotation marks omitted).  "[T]he driving force behind creation of the qualified immunity doctrine [is] a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery."  Id. at 706 (internal quotation marks omitted).

 "When determining whether a government official is entitled to qualified immunity, the court must assess: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was objectively reasonable for the [officials] to believe the conduct at issue was lawful."  Cozayatl, 377 F. Supp. 3d at 140–41 (internal quotation marks omitted) (citing Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)); see also Betts v. Shearman, 751 F.3d 78, 82–83 (2d. Cir 2014).  "To be clearly established, a right must be sufficiently clear

that *every reasonable official* would [have understood] that what he is doing violates that right."

Reichle v. Howards, 566 U.S. 658, 644, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) (emphasis

added; internal quotation marks omitted).  As this Court has explained, "[c]learly established

means that (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second

Circuit has recognized the right, and (3) a reasonable defendant would have understood from the

existing law that his conduct was unlawful."  Milner, 460 F. Supp. 2d at 376 (internal quotation

marks omitted).  Moreover, "[r]ights must be clearly established in a particularized sense, rather

than at a high level of generality; and such rights are only clearly established if a court can identify

a case where an officer acting under similar circumstances was held to have acted

unconstitutionally."  Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (internal quotation marks

omitted).

        In the context of a false arrest claim, a police officer is entitled to qualified immunity "if

there was at least arguable probable cause at the time the officer arrested the plaintiff . . . .  In

assessing arguable probable cause, the inquiry is whether *any* reasonable officer, out of a wide

range of reasonable people who enforce the law in the country, *could have* determined that the

challenged action was lawful."  Antic v. City of New York, 740 F. App'x 203, 205 (2d Cir. 2018)

(emphasis in original; citations omitted; internal quotation marks omitted).  "A police officer has

arguable probable cause if either (a) it was objectively reasonable for the officer to believe that

probable cause existed, or (b) officers of reasonable competence could disagree on whether the

probable cause test was met."  Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016) (citation

omitted; internal quotation marks omitted).  "In other words, an officer is entitled to qualified

immunity unless no officer of reasonable competence could have made the same choice in similar

circumstances. . . .  The qualified immunity defense, thus, is a broad shield that protects all but the

plainly incompetent or those who knowingly violate the law."  Kass v. City of New York, 864 F.3d 200, 206 (2d Cir.) (citation omitted; internal quotation marks omitted), cert. denied, 138 S. Ct. 487, 199 L. Ed. 2d 261 (2017); see also DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) ("Qualified immunity thus affords government officials breathing room to make reasonable—even if sometimes mistaken—decisions . . . and protects all but the plainly incompetent or those who knowingly violate the law from liability . . . ." (internal quotation marks omitted)).

Here, the Greenwich Police Defendants did not violate a "clearly established right" of the plaintiff.  Although there is a clearly established right to be free from arrest in the absence of a probable cause, see Scotto v. Almenas, 143 F.3d 105, 113 (2d. Cir. 1998), the law does not define "clearly established" rights so generally.  See City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775–76, 191 L.Ed.2d 856 (2015).  Rather, just as this Court defined the right in Milner as the "right to be free from unreasonable seizure in [one's] home where defendants possessed a court-issued document authorizing arrest," 460 F. Supp. 2d at 378, an appropriately particularized formulation of the right at issue in the present case is the right to be free from arrest in a public place where law enforcement officials possess a court-issued document authorizing arrest.

As previously discussed, because the capias authorized public arrest, the Greenwich Police Defendants did not violate any of Klein's constitutional rights in the first place.  Moreover, it simply cannot be said that "a reasonable defendant would have understood from the existing law that his conduct was unlawful," id. at 376 (internal quotation marks omitted), as evidenced by the uncertainty within the State's Attorney's office and in light of Delaware's representation that it intended to extradite Klein upon his arrest in Connecticut.  This is particularly true considering that, prior to the events alleged in the Complaint, courts (including this Court) had held that a facially valid capias does authorize an arrest, at least in public.  See id. at 365, 375; Micalizzi,

2007 WL 879137 at *2; <u>Warner</u>, 2010 WL 3925211 at *1–2.  Therefore, the Greenwich Police Defendants are entitled to qualified immunity as a matter of law because they did not violate any constitutional right of the plaintiff, much less a clearly established one.

"[E]ven if the right was clearly established," qualified immunity nonetheless attaches if "it was objectively reasonable for the [officers] to believe the conduct at issue was lawful." <u>Cozayatl</u>, 377 F. Supp. 3d at 140 (internal quotation marks omitted).  Given the plaintiff's allegations that the Greenwich Police Defendants located Klein in the NCIC database, confirmed the validity of the capias through direct contact with the Delaware Court of Chancery, were advised by the Connecticut State's Attorney's office to arrest Klein, and received confirmation that Delaware would extradite Klein upon his arrest, the Greenwich Police Defendants had every reason to believe their conduct was lawful and, thus, it was objectively reasonable for them to believe probable cause existed to arrest Klein.  At a minimum, officers of reasonable competence could debate whether there was probable cause, as this was an unusual situation that created uncertainty among local law enforcement officers and officials for the State of Connecticut.  Thus, the plaintiff's false arrest claim under § 1983 must be dismissed on the basis of qualified immunity, in addition to the grounds set forth above.

### D.   The Plaintiff Fails To State a Viable Claim for Conspiracy To Violate 42 U.S.C. § 1983 (Count Three)

Although the plaintiff does not specifically identify the Greenwich Police Defendants in the caption for Count Three, insofar as he seeks to assert this claim directly against these defendants, any such claim nonetheless fails because there was no actual violation of Klein's constitutional rights, the plaintiff's own allegations defeat any reasonable inference that the Greenwich Police Defendants knowingly participated in a plan to arrest Klein, the allegations are conclusory and vague, and the Greenwich Police Defendants are entitled to qualified immunity.

1.    <u>There was no actual constitutional violation</u>

A plaintiff alleging a § 1983 conspiracy "must prove an actual violation of the underlying constitutional right." <u>Shakir v. Derby Police Dep't</u>, 284 F. Supp. 3d 165, 194 (D. Conn. 2018) (citing <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) <u>cert. denied</u>, 527 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed. 2d 779 (1996)). Thus, "where the plaintiff's substantive claims fail on the merits, his civil conspiracy claim must fail as well." <u>Id.</u> (internal quotation marks omitted) (citing <u>Donofrio v. City of New York</u>, 563 F. App'x 92, 94 (2d Cir. 2014)); <u>see also</u> <u>Droz v. McCadden</u>, 580 F.3d 106, 109 (2d Cir. 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); <u>Singer</u>, 63 F.3d at 119 ("[A]lthough the pleading of a conspiracy . . . enable[s] a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.").

In Count Three, the plaintiff alleges a "conspiracy to have Klein arrested and detained" in violation of his Fourth Amendment rights. (Compl., Count Three, ¶¶ 53–54.) Because, as set forth above, the plaintiff's claim for false arrest under § 1983 fails, so must his claim for conspiracy to commit such false arrest. Count Three, therefore, should be dismissed.

2.    <u>The allegations in Count Three cannot establish that the Greenwich Police Defendants agreed to the alleged conspiracy</u>

"To survive a motion to dismiss a § 1983 conspiracy claim, plaintiff must plausibly allege (1) an agreement between a state actor and a private party (2) to act in concert to inflict unconstitutional injury, and (3) an overt act furthering that goal and causing damages." <u>Corsini v. Brodsky</u>, 731 F. App'x 15, 19 (2d Cir. 2018). The plaintiff alleges that the Greenwich Police Defendants committed the requisite overt act when they arrested Klein. (Compl., Count Three, ¶

51.)  As to the first element of a conspiracy claim,[6] while an agreement "can be tacit . . . rather than overt. . . .  the plaintiff must nonetheless show some factual basis supporting a meeting of the minds, such that the defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Ferrara v. Maturo, No. 3:17-cv-0360 (JCH), 2017 WL 4273291, at *4 (D. Conn. Sept. 26, 2017) (citations omitted; internal quotation marks omitted).

According to the Complaint, the Greenwich Police Defendants' role in the conspiracy was limited to their allegedly unlawful arrest of Klein.  (Compl., Count Three, ¶ 51.)  Remarkably, however, the plaintiff himself expressly absolves the Greenwich Police Defendants of any culpability vis-à-vis this alleged conspiracy.  He does not allege any meeting of the minds between the Glicks and the Greenwich Police Defendants, but rather alleges that the Glicks "converted" the Greenwich Police Defendants "into their **unwitting accomplices**" in the Glicks' scheme to have Klein arrested.  (Id. ¶ 2) (emphasis added).  The plaintiff's conspiracy claim is thus paradoxical: it is impossible for the Greenwich Police Defendants to have actively and intentionally entered into an "agreement" or acted in concert with the Glicks if they were but "unwitting accomplices" to the Glicks' plan, as the plaintiff alleges.  After all, a party cannot actively agree to be part of a conspiracy if that party is entirely unaware of the agreement in the first place.  Because the plaintiff's own allegations preclude him from satisfying the fundamental requirement of a conspiracy claim, that the actors reached a "meeting of the minds" to carry out their unlawful ends, Ferrara, 2017 WL 4273291 at *4, this, too, requires dismissal of Count Three.

### 3.     The allegations in Count Three are conclusory and vague

"A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  Ciambriello v. Cnty. of Nassau,

---

[6] The plaintiff cannot satisfy the second element because there was no unconstitutional injury, discussed above.

292 F.3d 307, 324 (2d Cir. 2002). "Because of the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause, federal courts require 'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive the plaintiff of his constitutional rights.'" Brooks v. Jackson, No. 11 CIV. 6627 (JMF), 2013 WL 5339151, at *11 (S.D.N.Y. Sept. 23, 2013). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." McGee v. Doe, 568 F. App'x 32, 35 (2d Cir. 2014).

Count Three, therefore, also fails because it is comprised of allegations that are wholly conclusory, vague and general. Id. The Complaint lacks any specific factual basis for the conclusory allegations that the Glicks, Cotto and the Greenwich Police Defendants "acted in concert and with the shared objective and common goal of having Klein arrested." (Compl., Count Three, ¶ 52.) Indeed, the remainder of the Complaint directly contradicts this claim, not only because the Greenwich Police Defendants were mere "unwitting accomplices" in the Glicks' plan, but also because the conduct the plaintiff attributes to the Greenwich Police Defendants negates any reasonable inference that these defendants shared an objective or common goal to arrest Klein. To the extent the Complaint includes any facts pertaining to the Greenwich Police Defendants' state of mind while they "attempted to determine how to handle the issue," (id. ¶ 23A), the plaintiff expressly alleges that Zuccerella told Ferencek that he (Zuccerella) "felt weird arresting someone on a civil capias," (id.), which describes a reluctance, not a willingness—let alone a goal—to arrest Klein. Accordingly, Count Three fails to state a viable conspiracy claim and should be dismissed.

      4.     <u>The Greenwich Police Defendants are entitled to qualified immunity</u>

Lastly, the United States Supreme Court has held that qualified immunity extends to claims of conspiracy to interfere with or violate a person's constitutional rights.  <u>See, e.g.</u>, <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1869, 198 L.Ed.2d 290 (2017).  Because, for all of the reasons previously discussed herein, the Greenwich Police Defendants are entitled to qualified immunity, **Count Three** should be dismissed on this basis, as well.

    **E.**      **<u>The Plaintiff Fails to State a Viable Claim for Negligent Infliction of Emotional Distress (Count Four)</u>**

In Count Four of his Complaint, the plaintiff asserts a claim for negligent infliction of emotional distress under Connecticut state law.  This claim, too, fails, as the allegations amount only to a conclusory recitation of the requisite elements.  Additionally, because the Greenwich Police Defendants had probable cause to arrest Klein, he cannot establish "unreasonable conduct," as required to state a viable negligent infliction of emotional distress claim.  Lastly, Count Four must be dismissed because the Greenwich Police Defendants are entitled to governmental immunity.

      1.     <u>The plaintiff's allegations are mere legal conclusions without sufficient supporting facts</u>

On its face, Count Four is legally insufficient for want of factual allegations necessary to support a claim for negligent infliction of emotional distress.  Such a cause of action requires that a plaintiff prove "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  <u>Carrol v. Allstate Ins. Co.</u>, 815 A.2d 119, 127 (Conn. 2003).

The allegations contained in Count Four simply parrot the language of these elements.  The sum total of the plaintiff's negligent infliction of emotional distress allegations are:

> 61.     The [Greenwich Police] Defendants' conduct as described herein had the unreasonable risk of causing emotional distress for the Plaintiff and such risk was foreseeable.
>
> 62.     The emotion[al] distress suffered by the Plaintiff was severe enough that it might cause illness or bodily harm.
>
> 63.     The [Greenwich Police] Defendants' conduct described herein proximately caused the emotional distress suffered by the Plaintiff, all to his detriment.

(Compl., Count Four, ¶¶ 61–63.)  Such "[t]hreadbare recitals" and "mere conclusory statements," Cozayatl, 377 F. Supp. 3d at 138, do not state a claim that can withstand a motion to dismiss. Absent specific supporting factual allegations, Count Four should be dismissed.

> 2.     The Greenwich Police Defendants had probable cause to arrest Klein, which defeats any claim that their conduct had the unreasonable risk of causing Klein emotional distress

That the Greenwich Police Defendants acted pursuant to a facially valid arrest warrant and had probable cause to arrest Klein also disposes of the plaintiff's claim for negligent infliction of emotional distress.  In Brooks v. Sweeney, 9 A.3d 347, 356 n.14 (Conn. 2010), the Connecticut Supreme Court observed that "the existence of probable cause defeats [a plaintiff's] claims of . . . negligent infliction of emotional distress."  There, the Court found that, "because the plaintiff's arrest was supported by probable cause . . . [the defendant] owed no duty to the plaintiff to prevent her lawful arrest."  Brooks, 9 A.3d at 363; see also Lamar v. Brevetti, 163 A.3d 627, 630–31 (Conn. App. Ct. 2017) (affirming summary judgment in favor of police defendants on claim for negligent infliction of emotional distress where arrest supported by probable cause). Subsequently, this Court cited Brooks in entering summary judgment for the arresting officer on a claim for intentional infliction of emotional distress, because the Court determined that the officer had

probable cause to arrest the plaintiff.  See Marsh v. Town of E. Hartford, No. 3:16-cv-928 (SRU), 2017 WL 3038305, at *8 (D. Conn. July 18, 2017).[7]

As a threshold matter, therefore, because, as discussed above, the Greenwich Police Defendants had probable cause to arrest Klein, they owed Klein no duty to prevent his lawful arrest, Brooks, 9 A.3d at 363, and the plaintiff's claim for negligent infliction of emotional distress must fail.  Moreover, the allegations that demonstrate probable cause in this case also demonstrate the reasonableness of the Greenwich Police Defendants' conduct.   No inference of unreasonableness can be drawn from the plaintiff's allegations, no matter how liberally viewed in his favor for purposes of this motion.  For these reasons, as well, this Court should dismiss Count Four of the plaintiff's Complaint.

### 3.   The Greenwich Police Defendants are entitled to governmental immunity

Even if the allegations in Count Four are legally sufficient on their face, and even if the plaintiff somehow overcomes the probable cause hurdle, the plaintiff still cannot state an actionable claim for negligent infliction of emotional distress because the Greenwich Police Defendants are entitled to governmental immunity.   General Statutes § 52–557n delineates circumstances under which municipalities and their employees may be held liable in tort, as well as circumstances under which they retain the shield of governmental immunity.  Durrant v. Bd. of Educ. of Hartford, 931 A.2d 859, 867 (Conn. 2007).  "Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . .  Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . .  The hallmark of a discretionary act is that it

---

[7] In Marsh, this Court drew a distinction between claims based on the fact of the arrest itself and claims based on the officer's allegedly negligent or reckless conduct during the course of the arrest.  Klein very clearly complains about the Greenwich Police Defendants' decision to arrest him and does not allege separate misconduct during the arrest.

requires the exercise of judgment. . . .   In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion."   Violano v. Fernandez, 907 A.2d 1188, 1193–94 (Conn. 2006) (internal quotation marks omitted).   To allege the breach of a ministerial duty not encompassed in the statute, a plaintiff must allege the breach of some written "rule, policy, or directive that prescribed the manner in which" the contested conduct was to be performed.  Id. at 1197.

General Statutes § 52–557n(a)(2)(B) provides municipal employees with governmental immunity for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."  It is widely recognized that "[a] police officer's decision to make an arrest . . . [is] discretionary rather than ministerial for purposes of considering whether the officer has immunity from a claim of negligence."  Bussolari v. City of Hartford, No. 3:14-cv-00149 (JAM), 2016 WL 4272419, at *4 (D. Conn. Aug. 12, 2016); see also Ancona v. Samsel, No. 3:16-cv-172 (MPS), 2017 WL 4765641, at *8 (D. Conn. Oct. 20, 2017) (observing that "[a]cts or omissions of police officers in the exercise of their duties are discretionary in nature" (internal quotation marks omitted)).  "Decisions regarding the scope of an investigation[,] whether probable cause for an arrest exists, whether information is speedy or not, whether to seek an arrest warrant or make a warrantless arrest, when and how best to pursue a wanted person, the number of police officers that are needed to conduct and complete an investigation, whether coordination with other agencies is necessary during an investigation, the search for a suspect or the pursuit of that suspect is appropriate and the proper supervision of subordinates—all require a municipal police officer to employ wide discretion and to exercise judgment."  Swanson v. City of Groton, No. X04CV030104164S, 2007 WL 4105513, at *6 (Conn. Super. Ct. Oct. 26, 2007), aff'd, 977 A.2d 738 (Conn. App. Ct. 2009).

In the present case, the plaintiff does not identify any written rule, policy, or directive that prescribed the manner in which the Greenwich Police Defendants were to determine whether probable cause to arrest him existed and the manner in which they were to arrest him. Rather, the plaintiff complains of conduct that required the exercise of discretion, namely, the decision whether to arrest him. Paragraph 23A essentially provides a roadmap of the Greenwich Police Defendants' exercise of discretion, highlighting the deliberative steps they took before arresting the plaintiff. Because the Greenwich Police Defendants were engaging in discretionary functions, they are entitled to governmental immunity on the claim of negligent infliction of emotional distress, unless the plaintiff has sufficiently pled a valid exception to immunity, which he has not.

Connecticut courts have recognized three exceptions to discretionary act immunity, including where circumstances make it apparent to a public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.[8] See Evon v. Andrews, 559 A.2d 1131, 1134 (Conn. 1989). This exception requires: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to harm. Doe v. Petersen, 903 A.2d 191, 198 (Conn. 2006). On the "identifiable person" element alone, it is clear that this exception does not save the plaintiff's claim. The Connecticut Supreme Court has construed this exception to apply to identifiable individuals and to "narrowly defined classes of foreseeable victims." Burns v. Bd. of Educ. of Stamford, 638 A.2d 1, 4 (Conn. 1994), overruled in part by Haynes v. City of Middletown, 101 A.3d 249 (Conn. 2014). The only identifiable class of foreseeable victims the courts have recognized is schoolchildren

---

[8] The second and third exceptions do not have any bearing on this case. They apply where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws, or where the alleged acts involve malice, wantonness, or intent to injure, rather that negligence. Evon v. Andrews, 559 A.2d 1131, 1134 (Conn. 1989). Although the plaintiff has asserted claims for false arrest or false imprisonment, and may attempt to include the Greenwich Police Defendants in his conspiracy claim, any inference that these acts constitute malice, wantonness, or an intent to injure is unsupported by the allegations asserted in the Complaint, as discussed elsewhere herein.

attending public schools during school hours, <u>Texidor v. Thibedeau</u>, 137 A.3d 765, 773–75 (Conn.

App. Ct.), <u>cert. denied</u>, 136 A.3d 1276 (Conn. 2016), which clearly does not pertain here.

Moreover, Connecticut's courts "have denied identifiable victim status unless the plaintiff was

required to be at the location where the injury occurred . . . ." <u>Strycharz v. Cady</u>, 148 A.3d 1011,

1028 (Conn. 2016).  Klein does not allege (nor could he allege) that he was known to the

Greenwich Police Defendants prior to his arrest, or that he was required to be at the location where

the arrest occurred.

The plaintiff likewise fails to plead facts supporting the "imminent harm" or

"apparentness" prongs of the identifiable person-imminent harm exception.  An alleged imminent

harm must be imminent in terms of its impact on a specific identifiable person.  <u>Grady v. Town of

Somers</u>, 984 A.2d 684, 703 (Conn. 2009).  Whether a harm is imminent turns on "whether it was

apparent to the municipal defendant that the dangerous condition was so likely to cause harm that

the defendant had a clear and unequivocal duty to act immediately to prevent the harm." <u>Haynes</u>,

101 A.3d at 260–61.  Of particular significance here, where an arrest is concerned, "it appears that

the type of harm required is physical harm or personal danger, *not the results of a wrongful arrest*."

<u>Chipperini v. Crandall</u>, 253 F. Supp. 2d 301, 312 (D. Conn. 2003) (emphasis added); <u>see also

Bento v. City of Milford</u>, No. 3:13-cv-1385 JBA, 2014 WL 1690390, at *6 (D. Conn. Apr. 29,

2014) (Connecticut courts "have also held that the imminent harm complained of must be physical

in nature in order for the exception to apply").

Here, the plaintiff fails to allege that it was apparent to the Greenwich Police Defendants

that their failure to act was so likely to cause him harm that they had a clear and unequivocal duty

to act to prevent the harm.  Insofar as the plaintiff attempts to argue that the defendants' conduct

in making the arrest exposed the plaintiff to "imminent harm" in the form of emotional distress,

that simply is not the type of danger that qualifies for this exception. See Bento, 2014 WL 1690390 at *7 ("[A]bsent some concrete manifestation of physical symptoms, [p]laintiffs' claims fail to fall into the identifiable person-imminent harm exception"); Celotto v. Brady, No. CV065003279, 2008 WL 2313331, at *12 (Conn. Super. Ct. May 15, 2008) (holding that allegation of "emotional distress so severe that physical illness could result" did not actually plead any physical harm). Indeed, the plaintiff does not allege that any physical harm at all befell him. Therefore, this exception is inapplicable, and the Greenwich Police Defendants remain entitled to governmental immunity as to Count Four.

### F.     The Plaintiff's Claim of Negligence is Legally Insufficient (Count Six)

Count Six fails for many of the same reasons that the plaintiff's other claims against the Greenwich Police Defendants fail. In Count Six, the plaintiff asserts a common law claim for negligence, pertaining solely to the Greenwich Police Defendants' decision to arrest him. As discussed above, the existence of probable cause bars any claim for negligence against the police officers. See also Marsh, 2017 WL 3038305 at *7 (where probable cause to arrest existed, plaintiff cannot bring "negligent arrest" claim pertaining to arrest itself or officer's conduct prior decision to arrest). As further discussed above, the Greenwich Police Defendants are entitled to governmental immunity because the decision to arrest the plaintiff required the defendants to employ discretion and exercise judgment, and no exception to discretionary act immunity applies. Accordingly, Count Six also should be dismissed.

### III.     CONCLUSION

For the foregoing reasons, defendants Carl Johnson, Christian Rosario and Marc Zuccerella respectfully request that the Court grant their motion to dismiss. As to Counts One and Three [sic], alleging false arrest, they fail because the plaintiff was arrested pursuant to a facially valid

warrant and with probable cause.  In addition, the defendants are entitled to qualified immunity on Count One.  Count Three, alleging conspiracy, fails as a matter of law because the underlying claim of false arrest pursuant to 42 U.S.C. § 1983 fails, the plaintiff cannot establish a "meeting of the minds" to conspire, and the defendants are also entitled to qualified immunity on this claim. Finally, Counts Four and Count Six, alleging negligent infliction of emotional distress and negligence, respectively, fail as a matter of law due to the existence of probable cause to arrest Klein and under the protection of governmental immunity.

DEFENDANTS,
CHRISTIAN ROSARIO, CARL JOHNSON,
AND MARC ZUCCERELLA

By:_____/s/_____
Beck S. Fineman, Esq.(ct27648)
Ryan Ryan Deluca LLP
1000 Lafayette Blvd, Suite 800
Bridgeport, CT 06604
Phone:  203-549-6650

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on October 8, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


         _____/s/_____
         Beck S. Fineman, Esq.