**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SAM KLEIN,
Plaintiff,

v.

TIMOTHY GLICK, et al.,
Defendants.

No. 3:19-cv-01056 (SRU)

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

On October 16, 2018, Sam Klein ("Klein") was arrested by officers of the Greenwich Police Department in Greenwich, Connecticut. On July 3, 2019, Klein brought this action against Timothy Glick, Renee Glick, and Jacob Glick (collectively "the Glicks"), Aaron Cotto ("Cotto"), Supervisory Connecticut Assistant State's Attorney Paul Ferencek ("SA Ferencek") and Officers Christian Rosario ("Rosario"), Carl Johnson ("Johnson"), and Sergeant Marc Zuccerella ("Zuccerella") (collectively "the Police Defendants") of the Greenwich Police Department, alleging that his arrest was unlawful. *See generally* Compl., Doc. No. 1.

On August 5, 2019, the Glicks filed a motion to dismiss. *See* Glicks' Mot. to Dismiss, Doc. No. 14, at 1. On September 12, 2019, SA Ferencek filed a motion to dismiss. *See* SA Ferencek's Mot. to Dismiss, Doc. No. 23. On October 8, 2019, the Police Defendants filed a motion to dismiss. *See* Police Defs' Mot. to Dismiss, Doc. No. 31, at 1. On February 25, 2020, I held a motion hearing at which I granted the Glicks' motion[1] and took the remaining motions under advisement. *See* Doc. No. 42.

[1] Specifically, I ruled that (1) there was a lack of personal jurisdiction over Timothy Glick, (2) Klein failed to state a viable Section 1983 claim against the Glicks, and (3) there was a lack of subject matter jurisdiction over the remaining state law claims asserted against the Glicks. Therefore, Counts Three through Seven asserted against the Glicks were dismissed.

For the reasons set forth below, the pending motions to dismiss (doc. nos. 23 and 31) are **granted.**

## I. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II. Background

This case stems from a civil lawsuit filed in the Delaware Court of Chancery between Klein and the Glicks. *See* Compl., Doc. No. 1 at ¶ 12. On November 17, 2018, the Delaware Court of Chancery entered a final judgment in favor of the Glicks in the amount of $433,000. *Id*. During post-judgment execution proceedings, the Glicks sought an order of contempt against Klein regarding a dispute over Klein's ability to produce documents and sit for a deposition in Delaware. *Id.* at ¶ 13. The Delaware Chancery Court later issued a civil capias against Klein that called for his arrest in Delaware and ordered that his information be listed on the Delaware Criminal Justice Information System and the National Crime Information Center Database ("NCIC"). *Id*.

Klein alleges that the Glicks hired Cotto, a purported former gang-member from Wyoming, to travel to Connecticut to facilitate his arrest.[2] *Id*. at ¶¶ 10, 15. Cotto allegedly pretended to seek services from Klein's luxury car storage business, Etourdissant, LLC, ("Etourdissant") on behalf of a wealthy client. *Id*. at ¶ 16. On October 16, 2018, Cotto arranged a meeting with Klein in Connecticut to render payment for such services. *Id*. at ¶¶ 20–22. Upon arriving at Etourdissant, Klein observed a black vehicle driven by Cotto following him. *Id*. at ¶ 19. Klein noticed the same vehicle multiple times during the days leading up to the meeting. *Id*. at ¶¶ 18–19, 21, 23. Klein fled Etourdissant and Cotto followed in close pursuit. *Id*. at ¶ 23.

Following his attorney's advice, Klein drove to a group of police officers at a construction site and explained that he was being followed. *Id*. at ¶ 21. Cotto arrived at the

[2] Cotto has not yet appeared in the case.

scene and produced a copy of the Delaware Chancery Court's order and civil capias against Klein. *Id.* Klein's attorney called Greenwich Police, who arrived at the scene shortly thereafter. *Id*. at ¶¶ 22–23. The Police Defendants arrested Klein on the scene after receiving confirmation from SA Ferencek that Delaware planned to extradite Klein pursuant to the civil capias. *Id*. at ¶ 23.

In the complaint, Klein brings Section 1983 claims as well as numerous state law claims. Count One asserts a Section 1983 claim against the Police Defendants. *Id*. at ¶¶ 34–39. Count Two asserts a Section 1983 claim against SA Ferencek. *Id*. at ¶¶ 40–45. Count Three asserts a claim of false imprisonment against every remaining Defendant.[3] *Id*. at ¶¶ 55–59. Count Four asserts a claim of negligent infliction of emotional distress against every remaining Defendant. *Id*. at ¶¶ 60–63. Finally, Count Six asserts a negligence claim against the Police Defendants. *Id*. at ¶¶ 69–73.

## III. Discussion

### A. Absolute Immunity

SA Ferencek argues that absolute prosecutorial immunity shields him from Klein's claims.[4] He contends that advising the Greenwich Police Department to arrest Klein was within the scope of his prosecutorial duties "as an advocate." SA Ferencek's Mem. in Supp. of Mot. to Dismiss ("SA Ferencek's Mem."), Doc. No. 23-1, at 5.

Prosecutors are entitled to absolute immunity from 42 U.S.C. § 1983 civil suits for money damages when "initiating a prosecution and [] presenting the State's case." *Imbler v.*

[3] Klein mistakenly asserts two Count Threes in the complaint. Because I previously dismissed the initial Count Three asserting claims against the Glicks for "aiding and abetting" a Section 1983 violation, I refer to Klein's false imprisonment claim as "Count Three."
[4] Those claims include: (1) a Section 1983 claim (Count Two); (2) false imprisonment (Count Three); and negligent infliction of emotional distress (Count Four).

*Pachtman*, 424 U.S. 409, 431 (1976). Immune prosecutorial conduct includes "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 431, n.33. "Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation. That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns v. Reed*, 500 U.S. 478, 494 (1991) (internal citation omitted). Although a court may extend the absolute immunity doctrine, it should only do so "sparingly" in situations where the prosecutor identifies specific justifications "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it . . . ." *Id.* at 486 (quoting *Imbler*, 424 U.S. at 421).

The issue of absolute immunity and contemporaneous legal advice is not a novel one. The Supreme Court has held that absolute immunity does not extend to prosecutors who advise officers on probable cause determinations before arrests. In *Burns*, a prosecutor advised Indiana police that they "probably had probable cause" to arrest a suspect for the murder of her two sons. *Id*. at 482. Based on the prosecutor's assurances, the police placed the petitioner under arrest. *Id*. The Court held that the prosecutor's actions were not covered by absolute immunity because giving advice to arresting officers was not "closely associated with the judicial process." *Id*. at 495. The *Burns* Court observed that "it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id*.

The facts presented here are similar. Klein alleges that SA Ferencek advised Greenwich officers to arrest him pursuant to the Delaware Chancery Court's civil capias because civil contempt "may also have a criminal element" and is a crime "in [his] view." Compl. Doc. No.1

at ¶ 23. Because the Court has held that such action is not so "intimately associated with the judicial phase of the criminal process, that it qualifies for absolute immunity." *Burns*, 500 U.S. at 493 (internal citation omitted), I conclude that SA Ferencek is not entitled to absolute immunity.

B. Qualified Immunity

The Defendants also contend that Klein's Section 1983 claims (Counts One and Two) are barred by qualified immunity. Specifically, they argue that no constitutional violation occurred because officers had probable cause to arrest Klein based on the Delaware court order and information provided in the NCIC database. In response, Klein argues that officers lacked probable cause under Connecticut General Statutes § 54-170[5] because the civil capias did not indicate whether Klein was wanted for a felony. *See* Compl., Doc. No. 1, at ¶ 35.

As government officials, prosecutors and police officers are entitled qualified immunity for official conduct. Courts typically frame the qualified immunity analysis by requiring the defendant to establish one of two conditions: that "[1] the defendant's action did not violate clearly established law, or [2] it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

A proper application of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (internal

[5] Connecticut General Statutes § 54-170 is entitled "Arrest Without a Warrant" and provides: "The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant, upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year, but when so arrested the accused shall be taken before such a judge with all practicable speed and complaint shall be made against him under oath setting forth the ground for the arrest as in section 54-169; and thereafter his answer shall be heard as if he had been arrested on a warrant." Conn. Gen. Stat. § 54-170.

quotations omitted). However, "[w]here the circumstances are in dispute and contrasting accounts . . . present factual issues as to the [alleged conduct of the defendant] and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotations omitted).

At the motion to dismiss stage, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd*, 563 U.S. at 734. It is often the case that a court will be unable to rule on a qualified immunity defense until discovery has been completed or the factual issues have been resolved at trial. *See, e.g., Southerland v. City of New York*, 680 F.3d 127, 162 (2d Cir. 2012). Nevertheless, it is proper—and desirable—to resolve the issue of qualified immunity at the motion to dismiss stage when it can be established by relying solely on the facts alleged in the complaint.

1. *Clearly Established Right*

The first issue is whether the Defendants violated a clearly established constitutional right. A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The right that the defendant was alleged to have violated must be "clearly established in a particularized sense, rather than at a high level of generality; and such rights are only clearly established if a court can identify a case where an officer under similar circumstances was held to have acted unconstitutionally." *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).

There is no dispute that the right to be free from arrest without probable cause was clearly

established at the time of Klein's arrest. *See, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). Klein's Section 1983 claims turn on whether it was objectively reasonable for the Defendants to believe that they had probable cause to arrest based on the civil capias and information in the NCIC database.

2. *Objective Reasonableness*

"[A] [police] officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins*, 478 F.3d at 87 (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995)). "Although qualified immunity typically is asserted by police officers, the qualified immunity standard of arguable probable cause also applies to prosecutors." *Anilao v. Spota*, 774 F. Supp. 2d 457, 491 (E.D.N.Y. 2011). The Second Circuit has defined the arguable probable cause standard as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotations and citations omitted). The Second Circuit has cautioned that "[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins*, 478 F.3d at 87.

Here, the Defendants argue that they had probable cause to arrest because, according to

the information in the NCIC database, there was a valid extraditable arrest warrant for Klein. In response, Klein contends that the civil capias alone did not constitute a valid arrest warrant. To that end, Klein argues that a reasonable prosecutor would have known that under Connecticut law a warrantless arrest may only be made "upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year." Conn. Gen. Stat. § 54-170. Here, Klein was not accused of committing a felony. *See* Klein's Opp., Doc. No. 34, at 4.

In *Milner v. Duncklee*, 460 F. Supp. 2d 360, 378 (D. Conn. 2006), I held that a civil capias may constitute a valid arrest if it is founded on probable cause. "[B]ecause a [civil] capias can issue without a probable cause determination," I ruled that "it is not objectively reasonable for an officer to believe a capias authorizes an arrest in the home unless, at a minimum, the document is either signed by a judge or magistrate, or is signed by a clerk of the court and indicates on its face that it is issued upon a finding of probable cause."[6] *Id.*

The fact that the plaintiff in *Milner* was arrested inside his home was critical. The Supreme Court has recognized that the Constitution affords more protections to an individual arrested in his home than to an individual arrested in public. *See Payton v. New York*, 445 U.S. 573, 587 (1980) (quoting *Dorman v. United States*, 435 F.2d 385, 389 (D.C. Cir. 1970)) ("[a] greater burden is placed . . . on officials who enter a home or dwelling without consent. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment."). Nonetheless, the Defendants were still required to make a probable cause determination before arresting Klein in public. *See Jenkins*, 478 F.3d at 87.

[6] I also held that the police officers involved were entitled to qualified immunity for Section 1983 claims because it was not clearly established whether a state issued civil capias authorized a home arrest. *See Milner*, 460 F. Supp. 2d at 378.

Based on the specific facts of this case, I conclude that the Defendants had arguable probable cause to arrest Klein. First, I note that the Delaware court order alone does not establish arguable probable. The Delaware court provides that, "[a] civil capias . . . shall issue for the arrest of Mr. Klein. Upon issuance of the civil capias, Mr. Klein shall be listed on: (i) the Delaware Criminal Justice Information System; and (ii) the National Crime Information Center Database." Delaware Civil Capias, Doc. No. 46-1, at 2–3. Although the order was electronically signed by a judge, there is no indication that it was supported by probable cause or that Klein was wanted for a felony. *See id*. However, the court order combined with the NCIC report and endorsement from other law enforcement officials in Delaware and Connecticut satisfies the arguable probable cause standard for the purposes of qualified immunity.

Courts have held that an individual's "hit" in the NCIC database can establish probable cause for an arrest. *See United States v. Towne*, 870 F.2d 880, 884 (2d Cir. 1989) (holding that an officer had probable cause to arrest a suspect when the officer learned of an out-of-state warrant that was mistakenly held "active" in the NCIC database, contacted out-of-state authorities to confirm the warrant, and requested and received a certified copy of warrant before arresting the suspect); *see also Sanchez v. Port Auth. of New York & New Jersey*, 2012 WL 1068078, at *6 (E.D.N.Y. Mar. 29, 2012) ("NCIC reports are typically considered reliable and information on them has often been accepted as reasonable basis to form probable cause for an arrest.").

Here, the Delaware civil capias ordered that Klein's name be listed in the NCIC database. *See* Delaware Civil Capias, Doc. No. 46-1, at 3. The NCIC report provides that Delaware would extradite Klein based on the underlying civil capias. "REMARKS: WARRANT VALID/WE WILL EXTRADITE FROM (CT)/ USE THIS TTA AS A DETAINER/SUBJECT WANTED

ON CHARGES OF (FAIL[URE] TO COMPLY DISCOVERY ORDER)." NCIC Report, Doc. No. 45, at 2. Because Klein was arrested in public rather than in his home, the holding in *Milner* provides Klein no help. *See Milner*, 460 F. Supp. 2d at 378.

The fact that the Police Defendants sought the advice of SA Ferencek before arresting Klein further supports a finding that their actions were objectively reasonable. *See Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) (internal citations omitted) ("Consulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity. Otherwise the incentive for officers to consult prosecutors—a valuable screen against false arrest—would be greatly diminished."). Moreover, SA Ferencek consulted a second state prosecutor who agreed that there was probable cause to arrest Klein. *See* Compl., Doc. No. 1, at ¶ 23. That allegation supports the conclusion that another prosecutor "in the same circumstances and possessing the same knowledge as the [prosecutor] in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone*, 246 F.3d at 203.

Although Klein's counsel received a letter dated January 10, 2019 from the Delaware Department of Justice reporting that Delaware would not extradite Klein, that letter was provided nearly three months after Klein's arrest. *See* Delaware Dep't of Justice Letter, Doc. No. 46-2, at 1. Despite the letter, Klein alleges that a Connecticut police despatcher "claimed that they had received a teletype from Delaware saying that Delaware would extradite." *See* Compl., Doc. No. 1, at ¶ 23.

Considering all the facts confronting the Defendants at the time of Klein's arrest, I conclude that there was arguable probable cause to arrest him. Therefore, the Defendants are entitled to qualified immunity with respect to Klein's Section 1983 claims (Counts One and

Two).

C. False Imprisonment

Klein also asserts a state-law false imprisonment claim (Count Three). Because I conclude that the Defendants are entitled to qualified immunity regarding Klein's federal claims, I decline to exercise supplemental over Klein's remaining state law claim pursuant to 28 U.S.C. § 1367.[7]

Accordingly, the motions to dismiss Count Three of the complaint are **granted**, without prejudice.[8]

D. Statutory Immunity

Finally, the Defendants also argue that Klein's negligence claims (Counts Four and Six) are barred by statutory immunity. I agree.

As a Connecticut state employee, SA Ferencek is immune from individually liability for negligent conduct performed within the scope of his employment. Connecticut General Statutes § 4-165 provides:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state . . . .

Conn. Gen. Stat. § 4-165.

---

[7] "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . . " 28 U.S.C. § 1367.

[8] Nonetheless, it is unlikely that Klein asserts a valid false imprisonment claim against SA Ferencek. Under Connecticut law, "[f]alse imprisonment is the unlawful restraint by one person of the physical liberty of another." *Berry v. Loiseau*, 223 Conn. 786, 820 (1992) (citation omitted). "The restraint must be accomplished through the 'exercise of force . . . express or implied.'" *Wade v. Kay Jewelers, Inc.*, 2019 WL 1396179, at *13 (D. Conn. Mar. 27, 2019) (quoting *Berry*, 223 Conn at 821). Although Klein alleges that the arresting officers physically restrained him, there is no indication that SA Ferencek exercised any force to restrain Klein. According to the complaint, Klein was already apprehended when arresting officers sought SA Ferencek's advice. *See* Compl., Doc. No. 1, ¶23.

Similarly, municipal employees are shielded from negligence liability under discretionary act immunity. "Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society." *Violano v. Fernandez,* 280 Conn. 310, 318 (2006). This Court has held that "[a] police officer's decision to make an arrest and the amount of force to use to effectuate an arrest are discretionary rather than ministerial decisions for purposes of considering whether the officer has immunity from a claim of negligence." *Bussolari v. City of Hartford*, 2016 WL 4272419, at *4 (D. Conn. Aug. 12, 2016). Connecticut courts recognize an "imminent harm" exception to discretionary act immunity, where circumstances make it apparent to a public officer that his or her failure to act would likely subject an identifiable person to imminent harm.[9] *Id*. (citing *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 367 (D. Conn. 2008)). "[C]ourts apply a three-part test to determine if that exception applies: there must be '(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm.'" *Id*. (quoting *Doe v. Petersen*, 279 Conn. 607, 616 (2006)).

Here, Klein concedes that SA Ferencek is statutorily immune under Connecticut General Statutes § 4-165. *See* Klein's Opp., Doc. No. 34 at 7 n.3. Moreover, Klein does not present any facts to invoke the "imminent harm" exception to discretionary act immunity. He does not allege that he was in any imminent danger when detained by Greenwich Police Officers and therefore has not established that his negligence claims overcome governmental immunity.

Accordingly, I **grant** the motions to dismiss Count Four and Count Six of the complaint.

---

[9] Connecticut courts also recognize two additional exceptions to discretionary act immunity, which do not apply in this case: (1) Where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws and (2) where the alleged acts involve malice, wantonness, or intent to injure, rather than negligence. *See Belanger*, 578 F. Supp. 2d at 367.

## IV. Conclusion

For the reasons stated above, the Defendants' motions to dismiss (doc. nos. 23, 31) are **granted** in substantial part. The Defendants are entitled to qualified immunity regarding Klein's Section 1983 claims (Counts One and Two), I decline to exercise supplemental jurisdiction over Klein's false imprisonment claim (Count Three), which is dismissed without prejudice, and Kline's negligence claims (Counts Four and Six) are barred by statutory immunity. The clerk shall enter judgment and close the file.[10]

So ordered.

Dated at Bridgeport, Connecticut, this 28th day of August 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

[10] Although Cotto has not appeared in this action and, accordingly, did not file a motion to dismiss, there is no viable federal claim asserted against him. I previously dismissed the initial Count III of the complaint for failing to state a Section 1983 claim. *See* Doc. No. 42. Accordingly, I decline to exercise supplemental jurisdiction over the remaining state law claims against Cotto pursuant to 28 U.S.C. § 1367. Therefore, Count III (false imprisonment), Count IV (negligent infliction of emotional distress) and Count V (intentional infection of emotional distress) asserted against Cotto are dismissed without prejudice.